Youssef H. Hammoud (SBN: 321934)
Ely Grinvald (SBN 285475)
THE CREDIT ATTORNEY, INC.
601 N. Parkcenter Dr., Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com
E: egrinvald@thecreditattorney.com

*Attorneys for Plaintiff,*
*Bernadette Ballasteros*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BERNADETTE BALLASTEROS,<br>Plaintiff,<br>v.<br>FALCK USA, INC.; CREDENCE RESOURCE MANAGEMENT, LLC,<br>Defendants. | Case No. 8:26-cv-2782<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. FDCPA, 15 U.S.C. § 1692 *et seq.;*<br>2. RFDCPA, Cal. Civ. Code § 1788 *et seq.* |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Bernadette Ballasteros ("Plaintiff"), by and through her attorneys, alleges the following against Defendants Falck USA, Inc. ("Falck") and Credence Resource Management, LLC ("CRM") (collectively, "Defendants").

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based upon the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and is

brought against Defendant CRM. Count II is based upon the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("RFDCPA"), and is brought against all Defendants. Both statutes prohibit debt collectors from engaging in abusive, deceptive, and unfair practices in connection with the collection of consumer debts.

**JURISDICTION AND VENUE**

2. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3. Supplemental jurisdiction of this Court arises under 28 U.S.C. § 1367 because the state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Because Defendants conduct business within the County of Orange, State of California, personal jurisdiction is established.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District, where Plaintiff resides and received Defendants' collection communications.

**PARTIES**

6. Plaintiff is a "person" as defined by Cal. Civ. Code § 1788.2(g).

7. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

8. Plaintiff is a natural person residing in La Habra, California.

9. Plaintiff, as a natural person allegedly obligated to pay a consumer debt, alleged to have been due and owing, is a "debtor" as that term is defined by California Civil Code § 1788.2(h) of the Rosenthal Act.

10. As partnerships, corporations, limited liability companies, or other similar entities, Defendants are each a "person" within the meaning of California Civil Code § 1788.2(g) of the Rosenthal Act.

11. Defendants allege Plaintiff owes money arising out of ambulance transport/medical services performed upon Plaintiff by Defendant Falck for treatment of injuries arising out of an industrial workplace accident, without payment being required at the time of services being rendered, and Plaintiff is informed and believes the money alleged to be owed originated from monetary credit that was extended primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by California Civil Code § 1788.2(d) and 15 U.S.C. § 1692a(5).

12. Plaintiff allegedly owed a monetary debt to Defendant Falck, which makes Defendant Falck a "creditor" under California Civil Code § 1788.2(i) of the Rosenthal Act.

13. Upon information and belief, Defendants are attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes due to ambulance transport/medical services performed upon Plaintiff to treat injuries arising out of a workplace accident without payment being required at the time of services and was therefore a "consumer credit transaction" within the meaning of California Civil Code § 1788.2(e) of the Rosenthal Act.

14. Because Plaintiff, a natural person allegedly obligated to pay money arising from what Plaintiff is informed and believes was a consumer credit transaction due to ambulance transport/medical services performed upon Plaintiff to treat injuries arising out of a workplace accident without payment being required at the time of services, the money allegedly owed was a "consumer debt" within the meaning of California Civil Code § 1788.2(f) of the Rosenthal Act.

15. Plaintiff is informed and believes Defendant Falck regularly collects or attempts to collect debts on behalf of itself and is therefore a

"debt collector" within the meaning of California Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engages in "debt collection" within the meaning of California Civil Code § 1788.2(b) of the Rosenthal Act.

16. At all relevant times herein, Defendant Falck was a company engaged, by use of mail and telephone, in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by Cal. Civ. Code § 1788.2(d). Defendant can be served through its agent for service of process, C T Corporation System, located at 330 N. Brand Blvd., Glendale, CA 91203.

17. Plaintiff is informed and believes that Defendant CRM uses instrumentalities of interstate commerce and the mails in a business the principal purpose of which is the collection of debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, and is therefore a "debt collector" as defined by 15 U.S.C. § 1692a(6).

18. Defendant CRM, in the ordinary course of business, regularly, on behalf of others, engages in debt collection and is therefore a "debt collector" within the meaning of California Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engages in "debt collection" within the meaning of California Civil Code § 1788.2(b) of the Rosenthal Act.

19. At all relevant times herein, Defendant CRM was a company engaged, by use of mail and telephone, in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by 15 U.S.C. § 1692a(5) and Cal. Civ. Code § 1788.2(d). Defendant can be served through its agent for service of process, CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

20. The true names and capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants, DOES 1 through 10, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused damages thereby to the Plaintiff, as hereinafter alleged. Defendants DOES 1-10 are, and each of them is, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and California Civil Code § 1788.2(c).

21. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

22. On or about November 12, 2024, Plaintiff was injured in a work-related accident.

23. Plaintiff's workplace injury has required on-going medical treatment/services.

24. Plaintiff's employer accepted liability for the injuries Plaintiff suffered at work, and therefore, any and all amounts due for the medical treatment and/or services rendered in relation to her workplace injury are not Plaintiff's legal responsibility.

25. Plaintiff was injured at her workplace, and Plaintiff's supervisor called for an ambulance.

26. Defendant Falck responded to Plaintiff's workplace with an ambulance.

27. On or about November 12, 2024, Defendant Falck's ambulance crew picked Plaintiff up at her workplace and transported her by ambulance to the hospital, and Plaintiff received ambulance transport/medical services from Defendant Falck related to her workplace injury.

28. Upon information and belief, Defendant Falck's records for the November 12, 2024 transport reflect that Plaintiff was picked up at her workplace, where she had been injured.

29. As such, Defendant Falck was aware that Plaintiff was seeking ambulance transport/medical services related to her workplace accident and pending workers' compensation claim.

30. Upon information and belief, Plaintiff's medical file and/or account notes reflect that Plaintiff's injury was the result of a workplace accident and that Plaintiff had an on-going workers' compensation case.

31. The ambulance transport/medical services rendered by Defendant Falck were necessitated by Plaintiff's workplace injury and were subject to Plaintiff's workers' compensation case.

32. Defendant Falck knew or should have known that it was providing ambulance transport/medical services to Plaintiff related to her workplace injury.

33. Defendant Falck knew, or at a minimum should have known, that Plaintiff's injuries were the result of a workplace accident, and that Plaintiff's employer was responsible for any bills related to the ambulance transport/medical services rendered for the workplace accident.

34. As such, Defendant Falck is prohibited from engaging in any collection efforts related to the alleged debt at issue.

35. Defendant Falck, in its ordinary course of business, regularly, on behalf of itself, engages in debt collection.

36. Despite knowing that Plaintiff's injury was the result of a workplace accident subject to workers' compensation, Defendant Falck began attempting to collect from Plaintiff directly and sent Plaintiff medical bills/statements related to the ambulance transport/medical services rendered to her for her workplace injury.

37. On or about November 7, 2025, Defendant Falck sent Plaintiff a medical bill/statement for the November 12, 2024 ambulance transport/medical services rendered to Plaintiff for her workplace injury.

38. The medical bill/statement was attempting to collect the amount of $522.88, which Plaintiff is not legally responsible for.

39. Each time Plaintiff received a medical bill/statement from Defendant Falck, she forwarded it to her workers' compensation attorney.

40. On or about November 24, 2025, Plaintiff's workers' compensation attorney sent Defendant Falck a cease and desist letter.

41. The November 24, 2025 letter further advised Defendant Falck that it is unlawful for a medical provider to demand payment from an injured worker for a work-related injury.

42. At or before the time it began billing Plaintiff, Defendant Falck possessed specific information regarding Plaintiff's injury, including the fact that it was a work-related injury; a critical fact which Defendant Falck knew or should have known.

43. Defendant Falck engaged in debt collection by sending Plaintiff repeated medical bills/statements related to the ambulance transport/medical services rendered to her for her workplace injury.

44. Upon information and belief, Defendant Falck uses third-party debt collector Defendant CRM to engage in debt collection for its patients.

45. Upon information and belief, after receiving the November 24, 2025 letter from Plaintiff's workers' compensation attorney, Defendant

Falck placed Plaintiff's account with Defendant CRM for collection and provided Defendant CRM with Plaintiff's account information, including the information reflecting Plaintiff's workplace injury and workers' compensation claim.

46. As such, Defendant CRM, in the ordinary course of business, regularly, on behalf of others, engages in debt collection.

47. On or about March 11, 2026, Defendant CRM sent Plaintiff a collection letter for the November 12, 2024 ambulance transport/medical services rendered to Plaintiff by Defendant Falck for her workplace injury.

48. The collection letter was attempting to collect the amount of $522.88, which Plaintiff is not legally responsible for.

49. In addition to the written collection letter, Defendant CRM placed multiple collection telephone calls to Plaintiff attempting to collect on the alleged debt.

50. These telephone calls were made to Plaintiff on or about January 19, 2026, March 20, 2026, and March 23, 2026.

51. The telephone calls attempted to collect amounts from Plaintiff, which Plaintiff is not legally responsible for.

52. Plaintiff did not answer Defendant CRM's telephone calls, and Defendant CRM continued to call Plaintiff's telephone.

53. Defendant CRM continued to place collection calls to Plaintiff's telephone approximately one to two times per week through June 2026.

54. After receiving Defendant CRM's collection letter, Plaintiff forwarded it to her workers' compensation attorney.

55. By placing Plaintiff's account for collection after being advised in writing of Plaintiff's workers' compensation claim, Defendant Falck

continued, through its agent Defendant CRM, to attempt to collect from Plaintiff an amount Plaintiff is not legally responsible for.

56. The collection letter and collection telephone calls were attempting to collect an amount that was not permitted by law because Plaintiff was not responsible for any medical bills related to her workplace injury.

57. Despite knowing that Plaintiff's injury was a workplace accident subject to workers' compensation, Defendant CRM attempted to collect from Plaintiff directly and sent Plaintiff a collection letter and collection telephone calls attempting to collect on an alleged debt she is not legally responsible for.

58. At or before the time it began attempting to collect from Plaintiff, Defendant CRM possessed and/or had access to specific information regarding Plaintiff's injury, including the fact that it was a work-related injury; a critical fact which Defendant CRM knew or should have known.

59. Defendant CRM engaged in debt collection by sending Plaintiff a collection letter and collection telephone calls related to the ambulance transport/medical services rendered to her for her workplace injury.

60. Defendants engaged in debt collection by sending Plaintiff repeated medical bills/statements, a collection letter, and collection telephone calls related to the ambulance transport/medical services rendered to her for her workplace injury.

61. Upon information and belief, Defendants routinely engage in unlawful debt collection practices against consumers.

62. Defendants' conduct was done intentionally and was intended to coerce Plaintiff into making a payment on an alleged debt that she does not owe and is not responsible for.

63. The medical bills/statements, collection letter, and collection telephone calls sent by Defendants deceived Plaintiff into thinking she was legally responsible for the ambulance transport/medical services rendered to her for her workplace injury. Defendants' collection attempts misled Plaintiff by implying that she was personally responsible for the alleged debt, despite knowing that the debt was covered under workers' compensation.

64. Due to Defendants' abusive actions, Plaintiff suffered from emotional and mental pain and anguish, including but not limited to, stress, anxiety, fear, and confusion.

65. Plaintiff was attempting to focus on her health and recovery from her workplace injury; Defendants' repeated collection efforts interrupted Plaintiff's solitude and added to Plaintiff's distress.

66. Plaintiff was under the belief that all medical treatment/services she received that were related to her workplace injury were not her responsibility and would be paid for by her employer, which is what the law mandates.

67. Plaintiff understood from her workers' compensation attorney that she was not responsible for the medical services related to her workplace injury, but the repeated bills/statements, collection letter, and collection telephone calls caused her to doubt her attorney.

68. Defendants had in their possession, and/or had access to, all information necessary to properly handle the correct billing for the treatment, and despite this, Defendants sent Plaintiff bills/statements, a collection letter, and collection telephone calls in an attempt to collect on a debt Plaintiff is not legally responsible for.

69. The RFDCPA is a "state version" of the FDCPA that "mimics or incorporates by reference the FDCPA's requirements," including sections

1692d through 1692f, "and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012).

70. The RFDCPA is a strict liability statute. *Garcia v. Creditors Specialty Serv.*, No. 14-cv-01806-BLF, 2016 U.S. Dist. LEXIS 159686, at *15 (N.D. Cal. Nov. 2016).

71. Defendants attempted to collect a debt regarding Plaintiff's medical treatment/services stemming from a work-related injury covered by workers' compensation.

72. Plaintiff has the interest and right to be free from collection efforts on debts Plaintiff does not owe.

73. Plaintiff has the interest and right to be free from the fear of being sued on debts Plaintiff does not owe.

74. Plaintiff has the interest and right to be free from the fear of being placed in collections on debts Plaintiff does not owe.

75. Plaintiff has the interest and right to be free from deceptive and/or misleading communications from debt collectors, including Defendants.

76. Defendants deprived Plaintiff of these rights.

77. The alleged debt(s) Defendants are attempting to collect cannot be lawfully collected from Plaintiff and as a result, the bills/statements, collection letter, and collection telephone calls contain false, deceptive, and misleading representations.

78. Defendants engaged in unfair and/or deceptive acts and/or unfair methods of competition by attempting to collect amounts that cannot lawfully be collected from Plaintiff.

79. Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from Defendants' conduct.

80. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debts and other alleged debts.

81. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted harm to Plaintiff's credit rating.

82. Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff to be sued for debts Plaintiff does not owe.

83. As a result of Defendants' conduct, Plaintiff wasted time, was caused to be confused and unsure as to Plaintiff's rights, and ultimately sought counsel and advice causing Plaintiff the risk of incurring damages including reasonable attorneys' fees in reviewing Plaintiff's rights under the law and prosecuting this claim.

84. As a result of Defendants' conduct, Plaintiff's counsel was caused to expend time, energy, and money to investigate Plaintiff's rights under the law and the legitimacy of the alleged debt.

85. The deprivation of Plaintiff's rights will be redressed by favorable decision herein.

86. Plaintiff has a physical impairment that substantially limits one or more major life activities, including but not limited to, performing manual tasks and working, and is therefore a "disabled person" as defined in Cal. Civ. Code § 1761(g).

**COUNT I**
**Defendant CRM**
**(Violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*)**

87. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

88. Defendant CRM violated the FDCPA. Defendant CRM's violations include, but are not limited to, the following:

a. Defendant CRM violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

b. Defendant CRM violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of any debt.

c. Defendant CRM violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of any debt.

d. Defendant CRM violated 15 U.S.C. § 1692e(10) by using false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

e. Defendant CRM violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect any debt.

f. Defendant CRM violated 15 U.S.C. § 1692f(1) by attempting to collect any amount (including any interest, fee, charge or expense incidental to the principal obligation) that is not permitted by law.

89. Defendant CRM's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

90. As a result of the foregoing violations of the FDCPA, Defendant CRM is liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

**COUNT II**
**All Defendants**
**(Violations of RFDCPA, CAL. CIV. CODE § 1788 *et seq.*)**

91. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

92. Defendants violated the RFDCPA. Defendants' violations include, but are not limited to, the following:

a. Defendants violated Cal. Civ. Code § 1788.17 by collecting or attempting to collect a consumer debt without complying with the provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code (Fair Debt Collection Practices Act):

i. Defendants violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

ii. Defendants violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of any debt.

iii. Defendants violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of any debt.

iv. Defendants violated 15 U.S.C. § 1692e(10) by using false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer.

v. Defendants violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect any debt.

vi. Defendants violated 15 U.S.C. § 1692f(1) by attempting to collect any amount (including any interest, fee, charge or expense incidental to the principal obligation) that is not permitted by law.

93. Defendants' acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

94. As a result of the foregoing violations of the RFDCPA, Defendants are liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bernadette Ballasteros respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendant CRM violated the FDCPA;

B. Statutory damages against Defendant CRM of $1,000.00 pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2)(A);

C. Actual damages against Defendant CRM pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(1);

D. Costs and reasonable attorneys' fees against Defendant CRM pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(3);

E. Declaratory judgment that Defendants violated the RFDCPA;

F. Statutory damages against Defendants of $1,000.00 pursuant to the RFDCPA, Cal. Civ. Code § 1788.30(b);

G. Actual damages against Defendants pursuant to Cal. Civ. Code § 1788.30(a);

H. Costs and reasonable attorneys' fees against Defendants pursuant to the RFDCPA, Cal. Civ. Code § 1788.30(c);

I. Treble damages pursuant to Cal. Civ. Code § 3345 for the sake of punishing or deterring Defendants for their conduct;

J. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

K. Any other relief that this Honorable Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a trial by jury in this action.

Respectfully submitted this 24th day of September 2026.

*/s/ Ely Grinvald*
Youssef H. Hammoud (SBN: 321934)
Ely Grinvald (SBN 285475)
THE CREDIT ATTORNEY, INC.
601 N. Parkcenter Dr., Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com
E: egrinvald@thecreditattorney.com

*Attorneys for Plaintiff,*
*Bernadette Ballasteros*